**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE,<br><br>Plaintiff,<br>v.<br><br>JULIANNE RICHARDSON d/b/a TAXES & MORE,<br><br>Defendant. | Case No.: 23-cv-82 |

**VERIFIED COMPLAINT**

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"), for its Verified Complaint against Defendant Julianne Richardson d/b/a Taxes & More ("Richardson"), alleges as follows:

**PARTIES**

1. Liberty is a Delaware limited liability company with its principal place of business at 500 Grapevine Hwy, #402, Hurst, Texas 76054.

2. Richardson is a resident of Indiana with a last known address of 6729 Briarcliff Drive, Fort Wayne, Indiana 46835. Upon information and belief, Richardson is doing business as Taxes & More at 7714 Lima Road, Fort Wayne, Indiana 46818.

**JURISDICTION AND VENUE**

3. This Court has personal jurisdiction over Richardson because she is a citizen of the State of Indiana.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000.

5. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331

(federal question), the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* ("DTSA"), and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) (1) because Defendant resides in this judicial district and a substantial part of the events giving rise to Liberty's claims occurred within this judicial district.

## FACTUAL BACKGROUND

7. Liberty is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including in Indiana, where Defendant operated a Liberty franchise.

8. Liberty's busiest time of the year typically spans the months of January through April, during which time Liberty generates approximately 90% of its annual revenue.

9. Liberty has invested substantial time and money in maintaining and improving its franchise system and reputation, including, *inter alia*: (1) maintaining and developing service and product quality; (2) developing uniform designs and markings for their services; (3) licensing trademarks and other proprietary information; and (4) training franchisees.

10. Liberty grants licenses to franchisees to use its trademarks and participate in its confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Liberty's valuable confidential information, reputation, goodwill, and other legitimate business interests.

11. Pursuant to the terms of its franchise agreements, Liberty discloses its confidential information and trade secrets, including its confidential Operations Manual, methods of operation of franchise, customer information and records, and marketing information (collectively,

2

"Confidential Information"), to franchisees.

12. All Liberty franchisees agree to never use, disclose, or permit the use or disclosure of Liberty's Confidential Information following the termination of their relationship with Liberty.

13. Liberty requires all franchisees to immediately stop using all Confidential Information and return all copies of Liberty's Operations Manual upon termination of their franchise relationship with Liberty.

**The Franchise Agreement**

14. On or about January 2, 2018, Richardson entered into a franchise agreement with Liberty for a territory in Fort Wayne, Indiana ("Franchise Agreement"). A copy of the Franchise Agreement is attached hereto as **Exhibit A**.

15. The Franchise Agreement had a 5-year term.

16. Richardson operated a Liberty franchise at 7714 Lima Road, Fort Wayne, Indiana 46818.

17. Under the Franchise Agreement, Liberty provided Richardson with training in franchise operation, marketing, advertising, sales, and business systems, and gave her access to use and license to use its trademarks and Confidential Information, including its confidential Operations Manual, which is not available to the public or to anyone who is not part of Liberty's system.

18. Under the Franchise Agreement, Richardson was obligated to pay monthly royalty and advertising fees in the combined amount of 19% of gross receipts, subject to minimum royalty terms.

19. Interest on all amounts due and owing by Richardson compounded daily at a rate of 12% per annum per the terms of the Franchise Agreement.

20. Sections 9 and 10 of the Franchise Agreement set forth Richardson's post-termination obligations, including to immediately, *inter alia*: (a) stop identifying as a Liberty franchisee; (b) refrain from harming or disparaging Liberty; (c) refrain from directly or indirectly offering tax preparation services for two years within twenty-five miles of her former Liberty franchise and the boundaries of her former franchise territory, (d) return to Liberty and never again use Liberty's Confidential Information, including all customer files and Liberty's confidential Operations Manual; (e) refrain for a period of two years following termination from soliciting the patronage of any person or entity served by her office for the prior twelve months for the purposes of offering income tax preparation, electronic filing of tax returns or financial products; (f) make good faith efforts to ensure that no person or entity offer tax preparation services at her former Liberty location for two years; and (g) pay all amounts due and owing to Liberty.

21. During the term of the Franchise Agreement, Richardson was obligated to, *inter alia*, not directly or indirectly prepare or electronically file income tax returns or offer financial products except in her capacity as Liberty's franchisee.

22. In Section 12 of the Franchise Agreement, Richardson agreed to forever refrain from interfering with or attempting to interfere with Liberty's business relationships or advantages, and from using for her own benefit or disclosing Liberty's Confidential Information and trade secrets, following the termination of the Franchise Agreement.

23. Richardson also agreed under the Franchise Agreement to maintain the confidentiality of Liberty's Confidential Information, and to adopt and implement procedures to prevent unauthorized use or disclosure of Liberty's Confidential Information.

24. The foregoing obligations are necessary to protect Liberty's protectable interest in their franchise business, including, *inter alia:* (a) protecting its goodwill and reputation; (b)

4

retaining customer relationships; (c) maintaining the confidentiality of its trade secrets, including but not limited to customer lists, confidential information; and (d) preserving its ability to facilitate the operation of successor franchises at franchise locations that have become associated in the minds of consumers with Liberty.

25. Richardson agreed that the Franchise Agreement's post-termination obligations "are reasonable, valid and not contrary to the public interest" and "shall survive any termination or expiration of this Agreement," agreed to "waive all defenses to the strict enforcement of Section 10," and agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of [those] duties."

26. Richardson acknowledged that the Confidential Information was to be used only in connection with the operation of a Liberty franchise, and agreed to refrain from using Liberty's Confidential Information for any purpose other than operating a Liberty franchise.

27. Section 17(a) of the Franchise Agreement provides that "Virginia law governs all claims that in any way relate to or arise out of this agreement or any of the dealings of the parties."

**Termination of the Franchise Agreement**

28. On January 10, 2022, Liberty issued notices of cure to Richardson after learning of her failure to respond to customer service opportunities, to hold a tax school, to open, and to submit gross receipt reports – all breaches of the Franchise Agreement (collectively, "Notices to Cure").

29. Richardson failed to cure the breaches identified in the Notices to Cure. As such, Liberty terminated the Franchise Agreement by way of a termination notice dated January 25, 2022 ("Termination Notice"). A copy of the Termination Notice is attached hereto as **Exhibit B**.

30. Richardson's non-competition obligations run through January 25, 2024.

**Post-Term Breaches of the Franchise Agreement**

31. Despite her post-termination obligations under the Franchise Agreement, Richardson is operating Taxes & More, a competing tax preparation business, at the same location as her former Liberty franchise. A copy of a February 10, 2023 report prepared by a private investigator retained by Liberty to investigate Taxes & More, which confirms Defendant's unlawful competition, is attached hereto as **Exhibit C**.

32. Defendant is using Liberty's Confidential Information and trade secrets, including but not limited to client contact information, to solicit and service Liberty's clients, in direct violation of the Franchise Agreement.

33. Upon information and belief, Taxes & More employs some of the same individuals who were employees of Richardson's former Liberty office.

## COUNT I
*Breach of Contract*
*(Equitable Claim)*

34. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

35. The Franchise Agreement is valid and enforceable.

36. Liberty has performed every obligation and condition required under the Franchise Agreement.

37. Following termination of the Franchise Agreement, Richardson was obligated to (a) take no action that could harm or prejudice Liberty, (b) return all client files and Confidential Information, including the Operations Manual, to Liberty, (c) forever refrain from using or disclosing Liberty's Confidential Information, (d) refrain from offering tax preparation services within twenty-five miles of her former Liberty office, (e) refrain from soliciting her former Liberty clients, and (f) make reasonable efforts to ensure that no person or entity offers tax preparation services at the former location for two years.

38. Richardson breached the Franchise Agreement by, *inter alia*, (a) using Liberty's Confidential Information to solicit and service Liberty's customers; (b) providing income tax preparation services at the very same location as her former Liberty franchise location; (c) taking actions that harm Liberty, including but not limited to operating a competing tax preparation business at her former Liberty location and actively soliciting her former Liberty clients; and (d) failing to take any action to ensure that a competing tax preparation business does not operate at her former Liberty franchise location.

39. The foregoing acts constitute material breaches of the Franchise Agreement.

40. Liberty has been and will be irreparably harmed by the foregoing actions, and monetary damages are an insufficient remedy because Richardson's continuing use and disclosure of Liberty's Confidential Information has injured the reputation and goodwill of Liberty, and has caused confusion between the services of Liberty and Taxes & More.

41. Liberty cannot quantify the continuing irreparable damage caused to the value of its proprietary and Confidential Information, goodwill, and its ability to sell franchises by Defendant's breaches.

42. Unless Richardson's wrongful conduct is enjoined, Richardson will continue to breach her obligations under the Franchise Agreement by continuing to use and disclose Liberty's Confidential Information.

## COUNT II
*Breach of Contract*
*(Monetary Claim)*

43. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

44. The Franchise Agreement is valid and enforceable.

45. Liberty has performed every obligation and condition required under the Franchise

Agreement.

46. Following termination of the Franchise Agreement, Richardson was obligated to (a) take no action that could harm or prejudice Liberty, (b) return all client files and Confidential Information, including the Operations Manual, to Liberty, (c) forever refrain from using or disclosing Liberty's Confidential Information, (d) refrain from offering tax preparation services within twenty-five miles of her former Liberty office, (e) refrain from soliciting her former Liberty clients, and (f) make reasonable efforts to ensure that no person or entity offers tax preparation services at the former location for two years.

47. Richardson breached the Franchise Agreement by (a) retaining and using Liberty's Confidential Information following termination of the Franchise Agreement to aid in the operation of Taxes & More; (b) taking acts that are harmful and injurious to Liberty, including but not limited to using and disclosing Liberty's Confidential Information and aiding and abetting in the operation of a competing tax preparation business after termination of the Franchise Agreement; and (c) offering competing tax preparation services within 25 miles of her former Liberty location.

48. The foregoing breaches are material.

49. As a result of the foregoing breaches, Liberty has been damaged.

## COUNT III
*Violation of DTSA*

50. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

51. The DTSA provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

52. Liberty owns numerous trade secrets, including but not limited to, its confidential Operations Manual and Confidential Information such as client tax returns, customer financial records and information, training manuals, marketing strategies, and customer lists, that are related

to Liberty's national income tax preparation services used in interstate commerce.

53. Liberty's tax preparation services include the filing of federal tax returns with the IRS, a U.S. federal agency, and filing tax returns in multiple jurisdictions for customers, in interstate commerce.

54. Liberty has franchise locations throughout the United States and each Liberty franchisee has access to and use of Liberty's Confidential Information and trade secrets, which provides franchisees with proprietary information on operating their businesses and providing professional tax services to customers in interstate commerce.

55. Richardson has used and continues to use Liberty's Confidential Information and trade secrets in connection with her business of providing tax preparation services to individuals and businesses in interstate commerce, including the preparation and filing of federal tax returns with the IRS. Defendant's misappropriation of Liberty's trade secrets is causing harm and damage to Liberty.

56. Liberty's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

57. Liberty's trade secrets are not readily ascertainable as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

58. Liberty's franchisees are licensed to use Liberty's trade secrets and Confidential Information only while their Franchise Agreements remain in effect, and only in connection with the operation of their Liberty franchise.

59. Liberty has taken extensive measures to preserve and protect its trade secrets for the purpose of maintaining their competitive advantage in the marketplace, including requiring

franchisees to enter into a franchise agreement before disclosure, requiring franchisees to protect the trade secrets in perpetuity, and initiating legal recourse against those who misappropriate its trade secrets.

60. Liberty disclosed its Confidential Information and proprietary trade secrets to Richardson solely pursuant to the terms of the Franchise Agreement and in connection with Richardson's Liberty franchise while the Franchise Agreement was in effect. At the time of disclosure, Richardson knew that knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets and/or limit the use of the trade secrets.

61. Under the Franchise Agreement, Richardson agreed never to use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever, and to return all copies of the Operations Manual and client information, following the termination of the Franchise Agreement.

62. Upon information and belief, following termination of the Franchise Agreement, Richardson used Liberty's Confidential Information without authority to operate her competing tax preparation business, Taxes & More.

63. Upon information and belief, following termination of the Franchise Agreement, Richardson has continued to unlawfully use and/or disclose Liberty's Confidential Information.

64. Richardson intentionally and without Liberty's permission or authorization misappropriated, used and/or disclosed Liberty's trade secrets for her own economic benefit and with the intention and knowledge that her conduct would injure Liberty.

65. As a direct and proximate result of Richardson's willful, improper, and unlawful disclosure and use of Liberty's trade secrets, Liberty has suffered and will continue to suffer

damages and irreparable injury.

66. Pursuant to 18 U.S.C. § 1836(b)(3)(A), Richardson's actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use.

67. Richardson's conduct in misappropriating Liberty's trade secrets is willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## COUNT IV
### *Common Law Conversion*

68. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

69. Liberty has the right to possess its Confidential Information.

70. While she was a Liberty franchisee, Richardson was authorized to possess and use Liberty's Confidential Information only in connection with her Liberty franchise.

71. Upon information and belief, Richardson has converted the Confidential Information for financial gain.

72. Richardson's interference with Liberty's property has deprived Liberty of its possession and use of the Confidential Information.

73. As a direct and proximate result of Defendant's conversion of Liberty's property, Liberty has suffered damages and will continue to suffer damages.

## COUNT V
### *Unjust Enrichment*

74. Liberty repeats and re-alleges the forgoing paragraphs as if fully set forth herein.

75. By knowingly accessing and using Liberty's Confidential Information, Defendant gained a material benefit at the expense of Liberty.

76. Richardson had notice and knowledge of the foregoing benefit.

77. Richardson received a substantial and definite benefit from Liberty and must therefore provide reasonable compensation to Liberty.

78. Richardson has not provided reasonable compensation to Liberty.

79. The circumstances are such that it would be inequitable for Richardson to retain the benefit without paying the value thereof to Liberty.

80. Liberty has been damaged as a direct and proximate result of Richardson's retention of the benefits described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Liberty prays for judgment against Defendant as follows:

1. For an order:

   A. Enjoining Richardson from using and/or disclosing Liberty's Confidential Information and trade secrets;

   B. Enjoining Richardson from directly or indirectly offering or providing tax preparation services within 25 miles of her former Liberty franchise territory for a period of two years following the entry of any injunction; and

   C. Enjoining Richardson from directly or indirectly soliciting customers of Liberty.

2. For an order requiring Richardson to return all Confidential Information to Liberty;

3. For an order requiring Richardson to transfer the lease associated with the Liberty location to Liberty;

4. For compensatory, liquidated, and statutory damages and attorneys' fees related to Richardson's misappropriation of trade secrets, conversion, and breaches of contract;

5. For minimum royalties in the amount of $11,000;

6. For pre- and post-judgment interest; and

7. For such other relief as the Court deems just and appropriate.

Dated: February 21, 2023               Respectfully submitted,

                                                      /s/ *Brittney B. Rykovich*
                                                     Brittney B. Rykovich (SBN: 34843-49)
                                                     **GORDON REES SCULLY MANSUKHANI, LLP**
                                                     333 N. Alabama St., Ste. 350
                                                     Indianapolis, IN 46204
                                                     Phone:  (317) 581-8523
                                                     Fax:  (317) 522-9300
                                                     brykovich@grsm.com

                                                     *Counsel for Plaintiff JTH Tax LLC*
                                                     *d/b/a Liberty Tax Service*

## **VERIFICATION**

CLIFFORD BIRNBAUM does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am a Regional Director for Plaintiff. I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true. The grounds of my knowledge, information, and belief are derived from my position as Regional Director, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiff's records and conversations with Plaintiffs' employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 16th day of February, 2023.

DocuSigned by:
3A79B8B6B10F47C...

Clifford Birnbaum, Regional Director